UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

PRIME PROPERTY AND CASUALTY
INSURANCE INC., and PRIME
INSURANCE COMPANY

        Plaintiffs,

vs.

OAKES FARM OP, LLC, JESSE
WHATLEY, DENISE BEAN and
PATRICIA TOOMBS,

        Defendants

Case No.

_____/

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiffs, Prime Property and Casualty Insurance Inc. ("PPCI") and Prime Insurance Company ("PIC") (collectively "Prime Insurers") sue Oakes Farm OP, LLC ("Oakes Farms"), Jesse Whatley ("Whatley"), Denise Bean ("Bean"), and Patricia Toombs ("Toombs") (collectively the "Defendants") for declaratory relief as follows:

### JURISDICTION AND VENUE

1. The Prime Insurers bring this action for declaratory judgment pursuant to 28 U.S.C. § 2201, seeking declaratory relief concerning an insurance dispute relating to claims arising out of a June 18, 2025, automobile accident and a resulting underlying lawsuit.

2. This Court has original jurisdiction pursuant to the provisions of 28 U.S.C. § 1332, as the amount in controversy exceeds the sum of $75,000, exclusive

of fees, interest and costs, and there is complete diversity of citizenship between the plaintiffs and the defendants.

3. The amount in controversy exceeds the sum of $75,000 because, *inter alia*, Bean has submitted to the Prime Insurers medical bills totaling well over $75,000 and indeed seeks recovery from the PPCI limits of $1,000,000 and PIC limits of $3,000,000.

4. PPCI is a foreign Corporation organized under the laws of the State of Illinois, domiciled in and with its principal place of business in Utah.

5. PIC is a foreign Corporation organized under the laws of the State of Illinois, domiciled in and with its principal place of business in Utah.

6. Oakes Farms is a Florida limited liability company organized under the laws of Florida, domiciled in and with its principal place of business in Collier County, Florida.

7. Oakes Farms has three members:

   a. Francis A Oakes III, who is a citizen of the State of Florida, residing in Immokalee, Florida.

   b. Kyle Cumming, who is a citizen of the State of Florida, residing in Immokalee, Florida.

   c. Lech Buga, who is a citizen of the State of Florida, residing in Immokalee, Florida.

1088806\326747730.v1

8. Whatley is a citizen of the State of Florida, domiciled in Hendry County, Florida.

9. Bean is a citizen of the State of Florida, domiciled in Hendry County, Florida.

10. Toombs is a citizen of the State of Florida, domiciled in Lee County, Florida.

11. Venue is appropriate in the Middle District of Florida as at least one of the Defendants resides there and the at-issue insurance policies were issued by the Prime Insurers for delivery to Oakes Farms in Collier County, Florida.

12. An actual justiciable controversy between the Prime Insurers and the Defendants exists within the meaning of 28 U.S.C. § 2201, regarding whether the Prime Insurers have a duty to defend and therefore a duty to indemnify under their insurance policies and with respect to the claims asserted by Bean and Toombs, as is described in greater detail below.

## THE FACTS

13. On June 18, 2025, there was an automobile accident in Hendry County, Florida, involving a 2018 Ford Transit with VIN 1FMZK1YM9JKA72010 (the "Subject Vehicle") operated by Whatley, in which Toombs was a passenger, and a vehicle operated by Bean (the "Subject Accident").

14. Toombs and Bean have asserted bodily injury claims as a result of damages allegedly incurred during the Subject Accident in excess of $75,000 against Oakes and Whatley.

15. On October 7, 2025, Bean filed a lawsuit to recover for those alleged damages arising from the Subject Accident. A copy of the operative complaint in the lawsuit, styled *Denise Bean v. Oakes Farm OP, LLC and Jesse Ann Whatley*, Case No. 2025-CA-002296, pending in the Twentieth Judicial Circuit in and for Collier County (the "Underlying Lawsuit"), is attached as **Exhibit "A**."

## THE POLICIES

16. PPCI issued a commercial automobile policy to Oakes Farms under Policy No. PC25011199, which was in effect from December 31, 2024 until December 31, 2025 (the "PPCI Policy"). The PPCI Policy provides limits of $1,000,000 per accident. A true and correct copy of the PPCI Policy in effect at the time of the Subject Accident is attached as **Exhibit "B**."

17. The PPCI Policy contains the following pertinent provisions:

### SECTION I – LIABILITY COVERAGE

A.   Insuring Agreement

   1. Subject to the terms and conditions set forth herein, this Policy covers Bodily Injury and Property Damage caused by an Accident that results from the ownership, maintenance, or use of a Covered Auto. We will pay Damages you are legally obligated to pay because of Bodily Injury or Property Damage to which this Policy applies if:

      a.      The Accident occurs during the Policy Period; and

      b.      The Accident occurs in the United States of America, including its territories and possessions; and

      c.      The Covered Auto is being used in the course and scope of the Named Insured's Commercial Auto Operations at the time of the Accident; and

      d.      The Covered Auto is being operated by a Permissive Driver at the time of the Accident.

The date of an Accident is the earliest date upon which Bodily Injury or Property Damage caused by such Accident occurs regardless of when the Bodily Injury or Property Damage is first discovered, first manifests or reported to us. Claims arising from Accidents occurring prior to the Policy Period are not covered regardless of when the Bodily Injury or Property Damage is first discovered, first manifests or is reported to us.

***

## SECTION IV – COVERED AUTOS

A.    Covered Autos

Covered Autos are limited to those Autos expressly identified on the Declarations or any Endorsement issued by us.

If "Scheduled Autos" appears on the Declarations, this Policy covers those Autos that are specifically identified as Scheduled Autos on the Declarations or any Endorsement issued by us. The premium associated with each Scheduled Auto must be paid as a condition precedent to coverage under this Policy.

If "Hired/Leased Autos" appears on the Declarations, this Policy covers Autos that the Named Insured hires, leases, rents, or borrows in relation to the Named Insured's Commercial Auto Operations. This coverage does not apply to and specifically excludes Autos that the Named Insured hires, leases, rents, or borrows from the Named

Insured's Employees, partners, associates, members, co-owners, and agents and the spouse, child, parent, and sibling(s) of such persons.

If "Composite Rate Basis" appears on the Declarations, this Policy covers all Autos used in conjunction with the Named Insured's Commercial Auto Operations.

### FLORIDA SCHEDULED DRIVERS ENDORSEMENT
### ACA-FL-03

**This Endorsement changes the terms and conditions of the Policy. Please read it carefully!**

Subject to all other terms and conditions of the Policy and all applicable Limits of Liability, the following changes to the Policy are made:

**A.** The term "Permissive Driver" in **SECTION I - LIABILITY COVERAGE, Part A. Insuring Agreement, Paragraph 1.d.** of the Policy is deleted and replaced with the term "Scheduled Driver".

**B.**   **SECTION III - WHO IS AN INSURED, Part B.** of the Policy is deleted and replaced with the following:

B. An "Insured" is also a Scheduled Driver of a Covered Auto with the Named Insured's permission:

1. in the course and scope of the Named Insured's Commercial Auto Operations; or

2. for Personal Use, if Personal Use coverage is indicated in the chart below.

**C.**   Coverage under the Policy is modified as follows:

Coverage under the Policy no longer extends to operation of a Covered Auto by a Permissive Driver. Instead, coverage is limited to situations in which a Scheduled Driver is operating a Covered Auto with the Named Insured's permission:

      1.    in the course and scope of the Named Insured's Commercial Auto Operations; or

      2.    for Personal Use, if Personal Use coverage is indicated in the chart below.

The Named Insured hereby represents that each and every Scheduled Driver is over the age of 21 and under the age of 65, unless specifically approved by the Insurer.

New drivers will not be added to the Policy until the Named Insured provides the new driver's name, date of birth, and driver's license number to the Insurer. New drivers must be approved by the Insurer and additional premium must be paid.

There is no coverage for any new driver until he/she has been scheduled on the Policy by way of an Endorsement issued by the Insurer and premium for the new driver has been paid.

**D.**    **Additional Definitions**

The capitalized terms in this Endorsement have specific meaning. Capitalized terms are defined in the Policy and as follows:

"Personal Use" means the use of a Covered Auto with the Named Insured's permission for non-business purposes.

"Scheduled Driver" means a driver or operator specifically identified in a Scheduled Drivers Endorsement.

***

**FLORIDA APPROVED DRIVERS ENDORSEMENT**
**ACA-FL-11**
**This Endorsement changes the terms and conditions of the Policy. Please read it carefully!**

Subject to all other terms and conditions of the Policy and all applicable Limits of Liability, the following changes to the Policy are made:

**A.** The term "Permissive Driver" in **SECTION I - LIABILITY COVERAGE, Part A. Insuring Agreement, Paragraph 1.d.** of the Policy is deleted and replaced with the term "Approved Driver".

**B.**     **SECTION III - WHO IS AN INSURED, Part B.** of the Policy is deleted and replaced with the following:

>   B.    An "Insured" is also an Approved Driver who is operating a Covered Auto:
>
>   >    1.    in the course and scope of the Named Insured's Commercial Auto Operations; and
>   >
>   >    2.    with the Named Insured's permission

**C.**    Coverage under the Policy is modified as follows:

>    Coverage under the Policy no longer extends to operation of a Covered Auto by a Permissive Driver. Instead, coverage is limited to situations in which an Approved Driver is operating a Covered Auto:
>
>   >    1. In the course and scope of the Named Insured's Commercial Auto Operations; and
>   >
>   >    2. with the Named Insured's permission.

Any liability coverage limits shown on the Declarations that exceed Florida's Financial Responsibility Requirement will not apply to operation of a Covered Auto by someone who is not an Approved Driver.

**D.**    **Additional Definitions**

The capitalized terms in this Endorsement have specific meaning. Capitalized terms are defined in the Policy and as follows:

8

"Approved Driver" means:

a. a driver who meets the Driver Qualifications at either the start date of this Policy or the hiring date of the driver, whichever is later; or

b. a driver who does not meet the Driver Qualifications at either the start date of this Policy or the hiring date of the driver, whichever is later, but for whom:

   (i) there has been an underwriting review by the Insurer;

   (ii) the additional premium and/or surcharge for adding coverage for the driver has been paid; and

   (iii) the driver has been scheduled on the Policy by way of an Endorsement issued by the Insurer.

"Driver Qualifications" means the qualifications set forth in **Part E.** of this Endorsement.

### E.     Driver Qualifications

Drivers must meet the following qualifications at either the start date of this Policy or the hiring date of the driver, whichever is later.

1. The driver must:

   (i) hold a valid driver's license issued by a state within the United States of America; or

   (ii) hold a valid commercial driver's license ("CDL") issued by a state within the United States of America, if operating a vehicle that requires a CDL.

   No learner's permit of any kind or a driver's license or CDL issued by a foreign state, country, or entity will satisfy this requirement.

2. The driver must have at least one (1) year of CDL experience if operating a vehicle that requires a CDL.

1088806\326747730.v1

3.  The driver must be between the ages of 23 and 68.

4.  For the three (3) years prior to the motor vehicle review ("MVR"), the driver must not have more than one (1) at-fault motor vehicle accident.

5.  For the three (3) years prior to the MVR, the driver must not have any speeding violations of fifteen (15) miles or more per hour over the posted speed limit.

6.  For the five (5) years prior to the MVR, the driver must not have any driver's license or CDL disqualifications arising out of a moving violation.

7.  For the five (5) years prior to the MVR, the driver must not have any charges relating to driving under the influence of drugs or alcohol or driving while impaired.

8.  For the five (5) years prior to the MVR, the driver must not have any felony charges involving a motor vehicle.

9.  For the five (5) years prior to the MVR, the driver must not have refused to submit to a blood alcohol concentration test or any other sobriety test.

10. For the five (5) years prior to the MVR, the driver must not have any reckless driving, careless driving or exhibition driving charges.

11. For the five (5) years prior to the MVR, the driver must not have any positive drug tests.

12. For the five (5) years prior to the MVR, the driver must not have any incidents, charges, or violations involving handheld devices, cellphones, or other similar devices.

**F.  Mandatory MVR Review**

1. The Named Insured must make sure all drivers operating a Covered Auto meet the requirements in this Endorsement.

2. At the inception of this Policy, the Named Insured must review an MVR for each of its drivers and determine if the drivers meet the Driver Qualifications.

3. For drivers hired after the start date of this Policy, the Named Insured must review an MVR when the driver is hired and determine if the driver meets the Driver Qualifications.

4. **Drivers Not Meeting Driver Qualifications Are Subject To Underwriting And Additional Premium**

    If the Named Insured wants to hire or continue using a driver who does not meet the Driver Qualifications, the Named Insured must give the driver's name, date of birth, and driver's license number to the Insurer for underwriting review. The Insurer will quote an additional premium and/or surcharge for adding coverage for the driver.

    Any liability coverage limits shown on the Declarations that exceed Florida's Financial Responsibility Requirement will not apply to a driver who does not meet the Driver Qualifications until he or she has been scheduled on the Policy by way of an Endorsement issued by the Insurer and the additional premium and/or surcharge for the driver has been paid.

***

18. PIC issued a surplus lines policy to Oakes Farms under Policy No. SC25011307, which was in effect from December 31, 2024 until December 31, 2025 (the "PIC Policy"). The PIC Policy provides limits of $3,000,000 per accident. A true and correct copy of the PIC Policy in effect at the time of the Subject Accident is attached as **Exhibit "C."**

19. The PIC Policy contains the following pertinent provisions:

1088806\326747730.v1

## SECTION I – LIABILITY COVERAGE

A.    Insuring Agreement

    1.    Subject to the terms, limitations, conditions, definitions, exclusions, and other provisions of this Policy, we will pay Damages in excess of any SIR that you are legally obligated to pay because of Bodily Injury, Property Damage, or Personal and Advertising Injury to which this Policy applies:

        a.    Should an Accident causing Bodily Injury, Property Damage, or Personal and Advertising Injury result from those specified activities or operations to which this Policy is limited;

        b.    If such Accident occurs during the Policy Period (including any Policy Period extended by a specifically identified Retroactive Date) stated on the Declarations or an Endorsement issued by the Insurer within the United States of America or its territories; and

        c.    A Claim arising out the Accident is made against you and reported to us in writing during the Policy Period, and is otherwise covered under the terms and conditions of the Policy at that time, and any applicable SIR has been timely paid.

    The date of an Accident is the earliest date upon which Bodily Injury or Property Damage caused by such Accident occurs regardless of when the Bodily Injury or Property Damage is first discovered, first manifests or reported to us. Claims arising from Accidents occurring prior to the Policy Period are not covered regardless of when the Bodily Injury or Property Damage is first discovered, first manifests or is reported to us.

        ***

B.    Liability Exclusions

    12.    Any Claim based upon or arising out of an Insured's ownership, selection, chartering, use, operation, rental, service, maintenance, or entrustment to others of any Auto, land motor vehicle, utility vehicle, Mobile Equipment, aircraft, or watercraft, including any apparatus

attached thereto, unless such Auto, land motor vehicle, utility vehicle, Mobile Equipment, aircraft , or watercraft is specifically scheduled on the Declarations or an Endorsement issued by the Insurer.

\*\*\*

21. Any claim arising out of the acts of an Insured's employee, volunteer, or agent outside the scope of his or her employment or duties.

## SECTION II – WHO IS AN INSURED

\*\*\*

B. Each of the following is also an Insured:

1. The Named Insured's employees, but only for acts within the course and scope of their employment or while performing duties related to the conduct of the Named Insured's business.

\*\*\*

## SCHEDULED AUTOS ENDORSEMENT
## PCA-99-07

\*\*\*

This Policy only provides coverage for Scheduled Autos while operating within the Radius indicated above. No Scheduled Auto is covered beyond its scheduled Radius. All Scheduled Autos are required to pass a regular safety inspection which must be documented and produced to the Insurer upon request.

The Named Insured hereby represents, acknowledges, and warrants that any vehicle not identified herein is no longer owned, operated on public roads, or leased by the Named Insured, is not being operated under the Named Insured's authority, including but not limited to the Named Insured's DOT number, and the Named Insured no longer has any interested whatsoever in the vehicles use or operation.

Furthermore, the Named Insured hereby agrees to indemnify and hold the Insurer harmless from any and all costs, attorneys fees, expenses, settlement payments, judgments, or other funds expended

or deemed owing by the Insurer as a result of any claim involving a vehicle not identified herein, for which the Insurer is nevertheless required to make payment as a result of any federal or state financial responsibility filing or requirement.

***

20. At the time of the Subject Accident, Whatley was not operating the Subject Vehicle in the course and scope of Oakes Farms' commercial auto operations.

21. At the time of the Subject Accident, Whatley was not operating the Subject Vehicle with Oakes Farms' permission.

22. Although Whatley was not operating the vehicle win the course and scope of Oakes Farms' commercial auto operations, upon information and belief, one or more defendants nevertheless believe there is coverage for the claims arising out of the Subject Accident under the Policy.

23. PPCI is presently defending Oakes Farms and Whatley against the Underlying Lawsuit subject to a full and complete reservation of rights under the PPCI Policy. As a result, the Prime Insurers have incurred and will continue to incur expenses associated with the investigation, defense and handling of the claims relating to the Subject Accident and Underlying Lawsuit.

24. Toombs and Bean are proper parties since their interests, if any, may be affected by this Court's declaration.

25. All conditions precedent to bringing this action have been performed or otherwise waived.

**COUNT I – DECLARATION OF NO COVERAGE BASED UPON THE FLORIDA APPROVED AND SCHEDULED DRIVERS ENDORSEMENTS**

26. PPCI realleges paragraphs 1 through 17 and 20 through 25 as paragraph 26 of Count I.

27. Pursuant to the Insuring Agreement in the PPCI Policy, as modified by the Florida Approved Drivers Endorsement and the Florida Scheduled Drivers Endorsement, the PPCI Policy affords liability coverage for accidents involving a covered auto used in the course and scope of the named insured's commercial auto operations and operated by an "Approved Driver" or a "Scheduled Driver."

28. Pursuant to the Insuring Agreement, as modified by the Florida Scheduled Drivers Endorsement, the PPCI Policy limits coverage "to situations in which a Scheduled Driver is operating a Covered Auto with the Named Insured's permission [] in the course and scope of the Named Insured's Commercial Auto Operations; or [] for Personal Use, if Personal Use is indicated in the chart below."

29. Personal Use is not indicated in the chart on the PPCI Policy's ACA-FL-03 Endorsement.

30. Pursuant to the Insuring Agreement, as modified by the Florida Approved Drivers Endorsement, the PPCI Policy limits coverage "to situations in which an Approved Driver is operating a Covered Auto [] in the course and scope

of the Named Insured's Commercial Auto Operations; and [] with the Named Insured's permission.

31. At the time of the Subject Accident, Whatley was not operating the Subject Vehicle in the course and scope of Oakes' commercial auto operations.

32. At the time of the Subject Accident, Whatley was operating the Subject Vehicle for personal use.

33. Accordingly, the PPCI Policy does not provide coverage for claims arising out of the Subject Accident, including the Underlying Lawsuit.

34. In view of the foregoing, an actual and present controversy exists between the parties as to the scope of PPCI's obligation, if any, to defend or therefore indemnify against any claim arising out of the Subject Accident, including the Underlying Lawsuit.

WHEREFORE, Prime Property and Casualty Insurance Inc. respectfully requests that this Court find and declare that it does not have a duty to defend, and therefore no duty to indemnify, for any claim arising out of the Subject Accident, including the Underlying Lawsuit.

### COUNT II – DECLARATION OF NO COVERAGE BASED UPON EXCLUSION 12

35. PIC realleges paragraphs 1 through 15 and 18 through 25 as paragraph 35 of Count II.

36. Pursuant to the Insuring Agreement and Liability Exclusion 12, coverage under the PIC Policy is precluded for any claims based upon, or arising out of an insured's ownership, selection, chartering, use, operation, rental, service, maintenance, or entrustment to others of any Auto, land motor vehicle, utility vehicle, Mobile Equipment, aircraft, or watercraft, including any apparatus attached thereto, unless such Auto, land motor vehicle, utility vehicle, Mobile Equipment, aircraft, or watercraft is specifically scheduled on the Declarations or an Endorsement issued by the Insurer.

37. At the time of the Subject Accident, the Subject Vehicle was not scheduled on the PIC Policy's declarations or on an endorsement issued by Prime.

38. Accordingly, coverage for any claims arising out of the Subject Accident, including the Underlying Lawsuit, is precluded under the PIC Policy.

39. In view of the foregoing, an actual and present controversy exists between the parties as to the scope of PIC's obligation, if any, to defend and therefore no duty to indemnify for any claim arising out of the Subject Accident, including the Underlying Lawsuit.

WHEREFORE, Prime Insurance Company respectfully requests that this Court find and declare that it does not have a duty to defend, and therefore no duty to indemnify, for any claim arising out of the Subject Accident, including the Underlying Lawsuit.

## COUNT III – DECLARATION OF NO COVERAGE BASED UPON THE SCHEDULED AUTOS ENDORSEMENT

40. PIC realleges paragraphs 1 through 15 and 18 through 25 as paragraph 40 of Count III.

41. Pursuant to the Insuring Agreement, as modified by the Scheduled Autos Endorsement, the PIC Policy only affords liability coverage for accidents involving a Scheduled Vehicle as that term is defined within the PIC Policy.

42. At the time of the Subject Accident, the Subject Vehicle was not a Scheduled Vehicle listed within the policy's declarations or endorsements.

43. Accordingly, coverage for the Underlying Lawsuit and other claims arising out of the Subject Accident under the PIC Policy is precluded.

44. In view of the foregoing, an actual and present controversy exists between the parties as to the scope of PIC's obligation, if any, to defend or therefore indemnify for any claim arising out of the Subject Accident, including the Underlying Lawsuit.

WHEREFORE, Prime Insurance Company respectfully requests that this Court find and declare that it does not have a duty to defend, and therefore no duty to indemnify, for any claim arising out of the Subject Accident, including the Underlying Lawsuit.

## COUNT VI – DECLARATION OF NO COVERAGE BASED UPON LIABILITY EXCLUSION 21

45. PIC realleges paragraphs 1 through 15 and 18 through 25 as paragraph 25 of Count VI.

46. Pursuant to the Insuring Agreement and Liability Exclusion 21, coverage under the PIC Policy is precluded for any claims arising out of the acts of an Insured's employee, volunteer, or agent outside the scope of his or her employment and duties.

47. At the time of the Subject Accident, Whatley was not operating the Subject Vehicle within the scope of her employment or duties with Oakes Farms.

48. At the time of the Subject Accident, Whatley was operating the vehicle for personal use.

49. Accordingly, coverage under the PIC Policy is precluded as Whatley's acts were outside the scope of their employment or duties with Oakes Farms.

50. In view of the foregoing, an actual and present controversy exists between the parties as to the scope of PIC's obligation, if any, to defend and therefore no duty to indemnify for any claim arising out of the Subject Accident, including the Underlying Lawsuit.

WHEREFORE, Prime Insurance Company respectfully requests that this Court find and declare that it does not have a duty to defend, and therefore no

duty to indemnify, for any claim arising out of the Subject Accident, including the Underlying Lawsuit.

                                                **HINSHAW & CULBERTSON LLP**

                                                */s/ Brady L. Taylor*
                                                **PEDRO E. HERNANDEZ**
Florida Bar No. 360589
phernandez@hinshawlaw.com
**BRITTNEY SAVINO**
Florida Bar No. 118898
bsavino@hinshawlaw.com
**BRADY L. TAYLOR**
Florida Bar No. 1049723
btaylor@hinshawlaw.com
2811 Ponce de Leon Boulevard, Suite 1000
Coral Gables, FL 33134
Telephone:  305-358-7747
Facsimile:   305-577-1063
*Counsel for Plaintiff*

1088806\326747730.v1